UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

WILLIAM ALLENBAUGH,       )
                          )  NO. **CV-09-3086-LRS**
    Plaintiff,            )
                          )  **ORDER DENYING**
                          )  **MOTION FOR SUMMARY**
    v.                    )  **JUDGMENT**
                          )
BNSF RAILWAY COMPANY,     )
a Delaware corporation,   )
                          )
    Defendant.            )
_____)

**BEFORE THE COURT** is the Defendant's Motion For Summary Judgment (ECF No. 38). This motion was heard with oral argument on June 1, 2011. Bahareh Samanian, Esq., argued for Plaintiff. Scott C. Cifrese, Esq., argued for Defendant.

**I. BACKGROUND**

This is a Federal Employers' Liability Act (FELA) case in which the Plaintiff, a former employee of the Defendant, BNSF Railway Company (BNSF), alleges he suffers from cumulative hip trauma as a result of his many years working for BNSF. Plaintiff contends BNSF was negligent in failing to provide him a reasonably safe place to work.

**II. DISCUSSION**

   **A. Summary Judgment Standard**

The purpose of summary judgment is to avoid unnecessary trials when there

**ORDER DENYING MOTION
FOR SUMMARY JUDGMENT-    1**

is no dispute as to the facts before the court. *Zweig v. Hearst Corp.*, 521 F.2d 1129 (9th Cir.), *cert. denied*, 423 U.S. 1025, 96 S.Ct. 469 (1975). Under Fed. R. Civ. P. 56, a party is entitled to summary judgment where the documentary evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505 (1986); *Semegen v. Weidner*, 780 F.2d 727, 732 (9th Cir. 1985). Summary judgment is precluded if there exists a genuine dispute over a fact that might affect the outcome of the suit under the governing law. *Anderson*, 477 U.S. at 248.

The moving party has the initial burden to prove that no genuine issue of material fact exists. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348 (1986). Once the moving party has carried its burden under Rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Id*. The party opposing summary judgment must go beyond the pleadings to designate specific facts establishing a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548 (1986).

In ruling on a motion for summary judgment, all inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmovant. *Matsushita*, 475 U.S. at 587. Nonetheless, summary judgment is required against a party who fails to make a showing sufficient to establish an essential element of a claim, even if there are genuine factual disputes regarding other elements of the claim. *Celotex*, 477 U.S. at 322-23.

**B. Is There Sufficient Evidence To Create Genuine Issue Of Material Fact Re Breach Of Duty?**

The FELA provides in relevant part:

> Every common carrier by railroad while engaged in commerce

**ORDER DENYING MOTION FOR SUMMARY JUDGMENT-    2**

> between any of the several States . . . shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce . . . for such injury . . . resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, road bed, works, boats, wharves, or other equipment.

45 U.S.C. § 51.

The FELA is not a workers' compensation statute, *Consolidated Rail Corp. v. Gottshall*, 512 U.S. 532, 543, 114 S.Ct. 2396 (1994), nor does it make the employer the insurer of the safety of its employees while they are on duty. The basis of liability "is . . . negligence, not the fact that injuries occur." *Ellis v. Union Pacific Ry. Co.*, 329 U.S. 649, 653, 67 S.Ct. 598 (1947). In a FELA case, the plaintiff bears the burden of proving the existence of a duty owed by the defendant, a breach of that duty (that is, conduct unreasonable in the face of a foreseeable risk of harm), causation, and damage. *Gottshall*, 512 U.S. at 538.

Under the FELA, a railroad employer owes its employees a duty to provide a safe place to work. *Atchison, T. & S.F. Railway Co. v. Buell*, 480 U.S. 557, 558, 107 S.Ct. 1410 (1987). A railroad breaches this duty when it fails to use ordinary care under the circumstances or fails to do what a reasonably prudent person would have done under the circumstances to make the working environment safe. *Tiller v. Atlantic C.L.R. Co.*, 318 U.S. 54, 67, 63 S.Ct. 444 (1943). In other words, a railroad breaches its duty when it knew, or by the exercise of due care, should have known that the prevalent standards at use were inadequate to protect the plaintiff and similarly situated employees. *Urie v. Thompson*, 337 U.S. 163, 182, 69 S.Ct. 1018 (1949). According to the Ninth Circuit Court of Appeals in *Mullahon v. Union Pacific R.R.*, 64 F.3d 1358, 1364 (9th Cir. 1995), quoting *Green v. River Terminal Ry.*, 763 F.2d 805, 808 (6th Cir. 1985):

> The test of foreseeability does not require that the negligent person should have been able to foresee the injury in the precise

**ORDER DENYING MOTION
FOR SUMMARY JUDGMENT-    3**

>form in which it in fact occurred. Rather it is sufficient if the negligent person might reasonably have foreseen that an injury might occur.

FELA does not permit an employer to raise the defense of assumption of risk. 45 U.S.C. §54. On the other hand, 45 U.S.C. §53 authorizes the employer to assert a contributory negligence defense with the understanding that an employee who is guilty of contributory negligence is not barred from recovery, although his damages are to be reduced in proportion to the amount of negligence attributable to him. An employee's voluntary, knowledgeable acceptance of a dangerous condition that is necessary for him to perform his duties constitutes an assumption of risk. On the other hand, contributory negligence is a careless act or omission on the employee's part tending to add new dangers to conditions that the employer negligently created or permitted to exist. *Taylor v. Burlington N. R.R. Co.*, 787 F.2d 1309, 1316 (9th Cir. 1986).

BNSF contends Plaintiff has no competent evidence that BNSF breached any duty to him. BNSF asserts the opinion of Plaintiff's expert, Robert O. Andres, Ph.D., that BNSF did not properly assess and/or respond to ergonomic risk factors to which Plaintiff was exposed, is not competent evidence that BNSF breached a duty of care to Plaintiff. According to BNSF, Dr. Andres' expert analysis does not raise a genuine issue of material fact that Plaintiff's workplace was not reasonably safe in light of the normal requirements of Plaintiff's job. BNSF asserts that Dr. Andres offers nothing but conjecture and speculation to support his position that BNSF's assessment of and response to ergonomic risk factors was unreasonable in light of the duties required of a trainman. Because Dr. Andres admits he has no "exact knowledge of the duration of Plaintiff's exposures to any of the job tasks on any given day for any past time period," and only knows that Plaintiff "repetitively used his arms, legs and feet over his 33 year career," BNSF asserts it is "incredible" to suggest Plaintiff's cumulative hip trauma would have been avoided had BNSF assessed and/or

**ORDER DENYING MOTION FOR SUMMARY JUDGMENT-    4**

responded to ergonomic risk factors in some different way.

Dr. Andres is no stranger to FELA cases. Just recently in *Abernathy v. Union Pacific R.R. Co.*, 2011 WL 1397439 at *3-4 (E.D. Ark. 2011), a district court declined to exclude Dr. Andres' opinions, noting that he was prepared to offer evidence that the railroad's actions with respect to addressing ergonomic risk factors for trackmen were unreasonable and fell short of industry best practices and that this was relevant to the question of "reasonable foreseeability of harm" and duty of care.[1] In arriving at this conclusion, the court noted that in a previous FELA case in the Eastern District of Arkansas, *Graham v. Union Pacific R. Co.*, 2008 WL 4418930 (E.D. Ark. 2008), expert evidence that risk could have been diminished by an ergonomics program was deemed relevant. In *Graham* at *2, the court noted:

> [Plaintiff's expert] is prepared to offer evidence that Union Pacific knew or should have known that its failure to implement an ergonomics program could result in increased risk of repetitive motion trauma to its employees engaged in particular activities. [The expert] has relied on reports from the Association of American Railroads [AAR] regarding ergonomics and cumulative trauma. [He] has also relied on document from Union Pacific's "Cumulative Trauma Disorder Prevention Task Force," which appears to have been charged with developing a cumulative trauma prevention policy and identifying and preventing ergonomic hazards in the work place. [H]e has presented evidence on the disputed issue of whether Union Pacific knew or should have known that the lack of ergonomics training exposed [plaintiff] to a hazardous working environment. . . . [Plaintiff's] case is based on the argument that the nature of his work increased the risk of back injury but that risk could have been diminished by an ergonomics program. In this case, whether the absence of ergonomic training for [plaintiff] was a cause of his injuries and whether Union Pacific knew or should have known that absence of training increased [plaintiff's] risk level are genuine issues of material fact. Therefore, [the expert's] testimony is relevant to a material issue in this case.

In the instant case, Dr. Andres is prepared to offer the same kind of evidence.

---

[1] In the case at bar, BNSF has not directed a *Daubert* motion at Dr. Andres challenging either his qualifications or the reliability of his methodology.

**ORDER DENYING MOTION FOR SUMMARY JUDGMENT-** 5

His report analyzes whether Plaintiff "was exposed to ergonomic risk factors during his work with BNSF" and "what manner of comprehensive safety and health program BNSF had in place to systematically deal with ergonomic issues." (ECF No. 40-4 at p. 2). The "latter analysis compares BNSF ergonomics efforts to those of other companies who have sought ergonomic consultation to improve their ergonomics situation." (*Id*.). Dr. Andres summarizes the "[r]esults of the literature and document reviews . . . on the basis of when BNSF either knew or should have known about the presence of ergonomic risk factors and prevention of WMSDs [work-related musculoskeletal disorders] and what steps BNSF should have taken which were not taken." (*Id*. at p. 3). He relies on AAR documents regarding ergonomics and cumulative trauma disorders (CTDs). (*Id*. at pp. 5, 9 and 11).[2] He also relies on various BNSF documents related to ergonomics in the work place (*Id*. at pp. 5-6; 33-39), noting, among other things, that "Santa Fe Railway developed an ergonomics program manual in 1995, indicating their awareness of ergonomic principles at a corporate level." (*Id*. at p. 34). Dr. Andres' report is sufficient to create a genuine issue of material fact as to what BNSF knew or should have known about whether its ergonomic training program was timely enough and adequate to reduce the risk of CTDs in individuals like the Plaintiff.

BNSF does not dispute that Plaintiff's normal job tasks exposed him to ergonomic risks. As such, BNSF contends "[t]he issue for purposes of this motion is whether the ergonomic risks to which Plaintiff was exposed were unreasonable in light of the normal requirements of Plaintiff's job, such that [P]laintiff's workplace was not reasonably safe." BNSF asserts that Dr. Andres' opinions do not answer this question. The question to which Dr. Andres' opinions are directed, and which a jury

---

[2] AAR is the trade association for the railroads. According to Andres' report, BNSF has been a member of AAR or its predecessor association "for years." (Andres Report at p. 34).

**ORDER DENYING MOTION FOR SUMMARY JUDGMENT-    6**

should answer, is whether BNSF should have and could have taken measures to reduce those ergonomic risks and if it failed to do so, whether that rendered Plaintiff's work place not reasonably safe.

Unlike the case cited by BNSF, *Lewis v. CSX Transportation, Inc.*, ___ F.Supp.2d ___, 2011 WL 882849 at *19 (S.D. Ohio 2011), the Plaintiff in the case at bar has presented enough evidence to create a genuine issue of material fact that BNSF "failed to do what a reasonably prudent employer would have done under the circumstances to improve safety in the working environment." In granting summary judgment to the defendant railroad, the *CSX* court distinguished its case from *Aparicio v. Norfolk & Western Ry. Co.*, 84 F.3d 803 (6th Cir. 1996), where there was additional evidence that, when viewed in a light most favorable to the plaintiff in that case, showed that despite its "ergonomics program," the defendant railroad (Norfolk & Western) did not do enough to ameliorate risks about which it knew or should have known. That additional evidence included the testimony of an ergonomics expert which showed the plaintiff's job involved "risk factors accepted in the biomechanical and ergonomics community for upper extremity cumulative trauma disorders such as carpal tunnel syndrome and epicondylitis," and that there were known remedial measures the railroad could have implemented to reduce plaintiff's risk of developing such disorders. 2011 WL 882849 at *18, citing and quoting *Aparicio*, 84 F.3d at 811-812. In the case at bar, Dr. Andres is an ergonomics expert who intends to testify along the same lines with regard to lower extremity (hip) cumulative trauma disorder.

BNSF asserts that Plaintiff has not and cannot demonstrate any deviation from industry practice by BNSF with respect to Plaintiff's work environment, and Plaintiff has not and cannot point to any alternative work methods or equipment used by any other Class I railroad during the time Plaintiff was working that are proven to be "safe" as compared to BNSF's methods and equipment. While it may be that industry practice is a relevant consideration in the determination of whether BNSF's work

**ORDER DENYING MOTION
FOR SUMMARY JUDGMENT-    7**

environment was reasonably safe, it is not dispositive.  Put another way, just because BNSF was essentially doing what every other Class I railroad was doing in terms of ergonomics in the workplace does not necessarily mean BNSF was providing a reasonably safe workplace.  A jury should decide whether the risks that were not assessed by BNSF were unsafe, or whether those risks could have reasonably been avoided in light of the normal requirements of a trainman's job.[3]

### C. Are FELA Claims Related To Ballast Precluded By The Federal Railway Safety Act (FRSA)?

BNSF asserts it is entitled to at least partial summary judgment to the extent Plaintiff's FELA claims are based on walking on ballast.[4]   Ballast is the stone or other material placed underneath and around railroad tracks to provide the structural support, drainage and erosion protection necessary for safe rail travel. *Nickels v. Grand Trunk Western Railroad, Inc.*, 560 F.3d 426, 428 (6th Cir. 2009).  BNSF contends ballast-related claims are precluded by the FRSA, 49 U.S.C. §20101 *et seq*. Plaintiff claims that for many years he worked on surfaces which were uneven, without uniform ballast, a mixture of dirt, rock and vegetation covered with debris, sloped, without dedicated walkways, and with other defective conditions which stressed his hip. He further claims BNSF violated WAC (Washington Administrative

---

[3] The mere fact BNSF knew that a portion of its employees had developed cumulative hip trauma does not mean BNSF knew or should have known that the particular work Plaintiff was assigned put him at risk for developing cumulative hip trauma.  *CSX* at *16.

[4] Plaintiff alleges in his Second Amended Complaint (ECF No. 61) that his cumulative hip trauma was due to variety of work-related activities including aligning draw bars, climbing ladders, throwing switches, operating hand brakes, riding cuts of cars, changing knuckles, in addition to walking on ballast "in yards and local industries," and walking up and down sloped ballast.

**ORDER DENYING MOTION FOR SUMMARY JUDGMENT-    8**

Code) 480-60-035 by maintaining defective, unsafe and improperly maintained walkways.

If a cause of action would be preempted by the FRSA if brought under state law, the cause is likewise precluded by the FRSA if it is brought under the FELA. *Nickels*, 560 F.3d at 428. Under this analysis, for FRSA regulations to preclude a FELA claim, a party "must establish more than that they 'touch upon' or 'relate to' that subject matter," and must show that "the federal regulations substantially subsume the subject matter" of the claim. *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 664, 113 S.Ct. 1732 (1993).

In *Nickels*, the plaintiffs brought claims under the FELA arguing their employers had "failed to provide a safe working environment by using large mainline ballast- instead of smaller yard ballast- underneath and adjacent to tracks receiving heavy foot traffic" and that they suffered permanent injuries as a result. The Sixth Circuit examined the regulation prescribed by the Secretary of Transportation relating to ballast, 49 C.F.R. §213.103, which provides:

> Ballast; general. Unless it is otherwise structurally supported, all track shall be supported by material which will-
>
> (a) Transmit and distribute the load of the track and railroad rolling equipment to the subgrade;
>
> (b) Restrain the track laterally, longitudinally, and vertically under dynamic loads imposed by railroad rolling equipment and thermal stress exerted by the rails;
>
> (c) Provide adequate drainage for the track;
>
> (d) Maintain proper track crosslevel, surface, and alinement.

The Sixth Circuit observed that "[r]ather than prescribing ballast sizes for certain types or classes of track, the regulation leaves the matter to the railroads' discretion so long as the ballast performs the enumerated support functions," and "[i]n this way, the regulation substantially subsumes the issue of ballast size."

**ORDER DENYING MOTION FOR SUMMARY JUDGMENT-    9**

*Nickels*, 560 F.3d at 431. Accordingly, the Sixth Circuit found that 49 C.F.R. §213.103 covered the issue of ballast size and precluded the plaintiffs' FELA claims that defendant failed to provide a safe working environment by using large mainline ballast- instead of smaller yard ballast- underneath and adjacent to tracks receiving heavy foot traffic. The Sixth Circuit also noted, however, that the plaintiffs had not brought claims alleging negligence "in the railroads' use of oversized ballast in areas completely separate from those where track stability and support were concerned," *Id*. at 432, indicating such claims are distinguishable and suggesting they would not be precluded by 49 C.F.R. §213.103.

In a very recent case, *Brenner v. Consolidated Rail Corp.*, 2011 WL 1474296 (E.D. Pa. 2011), the plaintiff alleged in his complaint that he was exposed to "excessive and harmful cumulative trauma to his knees due to . . . walking on uneven or unleveled ballast." Relying on the Sixth Circuit's decision in *Nickels*, the district court held that to the extent Plaintiff's claims were predicated upon allegations of negligence regarding the nature and size of ballast used for track stability, support and drainage- including mainline, secondary, and yard track- such claims were precluded by 49 C.F.R. Section 213.103. *Id*. at *7. The plaintiff was, however, allowed to pursue his ballast-related claims to the extent they related "to ballast being used in areas completely separate from those where track support, stability and drainage are concerned." *Id*.

Here, in the case at bar, Plaintiff says he is not making a claim that BNSF should have used a different sized ballast underneath and adjacent to the tracks, that is, a different sized ballast to support and stabilize the tracks. Plaintiff says his claim is a wholly separate and distinct one that BNSF failed to provide safe and suitable

///

///

///

**ORDER DENYING MOTION
FOR SUMMARY JUDGMENT-    10**

walkways in the railroad yards in which he worked.[5] One of Plaintiff's requests for production at issue in his recent motion to compel was a request for all documents relating to the size and quality of yard ballast used in the Wenatchee, Spokane, Wishram, and Yakima yards from 2001 to present. *Nickels* does not appear to preclude ballast-related claims involving "areas completely separate from those where track support, stability and drainage are concerned," and that would seem to include certain areas within a railroad yard.

That said, the court is not persuaded *Nickels* is even controlling in the Ninth Circuit. In a recent decision out of the District of Montana, *Abromeit v. Montana Rail Link*, 2010 WL 3724425 (D. Mont. 2010), one of the plaintiff's claims was that while he was performing a walking inspection of a railroad yard, he lost his footing when the surface of the track adjacent to a new railroad tie gave way, causing him injury. The Montana district court held this claim was not precluded by 49 C.F.R. §213.103 because whether the area where the plaintiff fell was safe for workers was not substantially subsumed by the regulations on ballast construction. *Id*. at *5. The Montana district court noted that a California district court had concluded, and the Ninth Circuit had confirmed, "the concern that employees have for a safe working environment" is not directly addressed by the ballast regulations under the FRSA. *Id*., citing and quoting *S.P. Transp. Co. v. Pub. Util. Commn. of Cal.*, 647 F.Supp. 1220, 1225 (N.D. Cal. 1986), *aff'd*, 820 F.2d 1111 (9th Cir. 1987). According to the Montana district court:

> While MRL relies on *Nickels*, given the Ninth Circuit's opinion affirming the California regulations requiring walkways around tracks for worker safety, it would be inappropriate to rely on the reasoning in *Nickels*, to bar this claim by Abromeit. MRL may have been in full

---

[5] In his report, Dr. Andres compares walking ballast with mainline ballast. (Andres Report at pp. 14-17).

**ORDER DENYING MOTION FOR SUMMARY JUDGMENT-** 11

> compliance with the ballast regulations, but such compliance merely "insure[s] that tracks have adequate support." *S.P. Transp. Co.*, 647 F.Supp. at 1225. Compliance with the regulations does not address the issue of workplace safety raised by Abromeit.

*Abromeit* at *5.

The Montana district court also relied on *Davis v. Union Pacific R. Co.*, 598 F.Supp.2d 955 (E.D. Ark. 2009), where the court found a plaintiff's FELA claim for an injury he suffered while walking on loose ballast was not precluded by the FRSA, agreeing the issue of walkways is not covered by the regulation concerning ballast. The *Davis* court concluded that: "Plaintiff's FELA claim concerns defendant's failure to provide a reasonably safe workplace by failing to provide safe walkways on which to perform his duties. The regulation does not touch, cover or substantially subsume the matter of employee walkways or yard walkway conditions." *Id.* at 959. Among the cases relied upon by the *Davis* court was the Northern District of California's decision in *S.P. Transp. Co. v. Pub. Util. Commn. of Cal.*, 647 F.Supp. 1220, 1225 (N.D. Cal. 1986), *aff'd*, 820 F.2d 1111 (9th Cir. 1987). *Id.* at 959-60.

Even if Plaintiff's ballast-related claims do not fall within the exception apparently carved out by *Nickels*, per existing Ninth Circuit authority, those claims are not precluded.

## III. CONCLUSION

For the reasons set forth above, Defendant's Motion For Summary Judgment (ECF No. 38) is **DENIED**. A jury will determine the weight to be given to Dr. Andres' opinions in its resolution of the issues of material fact identified above.

///
///
///
///

**ORDER DENYING MOTION FOR SUMMARY JUDGMENT-    12**

1    **IT IS SO ORDERED**. The District Executive is directed to enter this order
2    and forward copies to counsel.
3        **DATED** this   6th   of June, 2011.

                                    *s/Lonny R. Suko*
                            ─────────────────────────────
                                    LONNY R. SUKO
                                United States District Judge

**ORDER DENYING MOTION**
**FOR SUMMARY JUDGMENT-    13**